ORIGINAL

FILED
DISTRICT COURT OF GUAM
JUL 29 2005
MARY L.M. MORAN
CLERK OF COURT



LEONARDO M. RAPADAS
United States Attorney
MARIVIC P. DAVID
Assistant U.S. Attorney
Suite 500, Sirena Plaza
108 Hernan Cortez Avenue
Hagåtña, Guam 96910
Telephone: (671) 472-7332
Telecopier: (671) 472-7334

Attorneys for United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| UNITED STATES OF AMERICA, | ) | CRIMINAL CASE NO. 05-00049 |
|---|---|---|
| Plaintiff, | ) | |
| | ) | GOVERNMENT'S RESPONSE TO |
| | ) | DEFENDANT NELSON'S MOTION |
| vs. | ) | TO SUPPRESS |
| | ) | |
| ERICA REYES BORJA, and | ) | |
| RICKY ANTHONY NELSON, | ) | |
| | ) | |
| Defendants. | ) | |

A. Introduction

U.S. Immigration and Customs Enforcement Task Force Agent Erwin Fejeran encountered Defendant, Ricky Anthony Nelson, during a border entry processing of arriving passengers on May 14, 2005, at approximately 6:30 p.m., at the Guam International Air Terminal. Defendant Nelson was traveling with his fiancee, co-defendant Erica R. Borja. Defendant Nelson explained the purpose of his travel and his employment status to Fejeran. While at the airport and at approximately 7:37 p.m., Agent Fejeran asked the defendant if he would consent to an x-ray examination to determine the presence of contraband. Defendant replied he did not have a problem with the exam, but upon learning that he needed to provide consent in writing and after Fejeran advised him of his *Miranda* rights, the defendant stated he wanted an attorney.

Thereafter, at approximately 11:45 p.m., Guam Customs and Quarantine Officer Craig Camacho applied for and obtained search warrants for the x-ray examinations of the torso and abdominal areas of defendants Nelson and Borja. Both defendants were transported to the Guam Memorial Hospital during the early morning hours of May 15, 2005. On the same date at approximately 2:45 a.m., medical personnel extracted three condoms containing methamphetamine from co-defendant Borja's vaginal cavity. No drugs were found on the defendant. Borja waived her *Miranda* rights at approximately 4:27 a.m. and stated to the effect, among other things, that she put the "ice" inside her with Rick's knowledge on the day they departed California for Guam, and that during their stay Rick's friend in California asked Rick if he could take ice back to Guam.

Following defendant's arrest and when the defendant learned that drugs were found on Borja, defendant indicated he wanted to talk. Officer Camacho advised defendant of his *Miranda* rights at approximately 6:00 a.m. After the defendant waived them and when asked about the drugs found on Borja, the defendant stated to the effect that he would do whatever time he would get.

Defendant argues that once he asked for counsel when agent Fejeran asked him if he would consent to an x-ray examination, the officers violated the Fifth Amendment by later interrogating him.

B. Fifth Amendment

The *Miranda* right to counsel attaches when a suspect invokes the right during custodial interrogation. In Miranda v. Arizona, 384 U.S. 436, 444-45 (1966), the Supreme Court held that the prosecution may not use a defendant's statements obtained through custodial interrogation unless, prior to questioning, the defendant is informed of certain rights, including the right to an attorney. The Supreme Court in Edwards v. Arizona, 451 U.S. 477, 484-85 (1981), construed *Miranda* to require that police refrain from initiating custodial interrogation once a defendant has

//

2

requested counsel until counsel has been made available to him unless he initiates further communication.

The *Miranda-Edwards* safeguards were designed to protect one's privilege against self-incrimination secured by the Fifth Amendment. That privilege, however, "protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature." Schmerber v. California, 384 U.S. 757, 761 (1966). For example, requiring a defendant to provide the police with blood, saliva, fingerprints or hair samples is not protected by the Fifth Amendment, but is analyzed as a search under the Fourth Amendment. "The distinction . . . is that the [Fifth Amendment] privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it." Id. at 764.

Courts have also recognized that if the right to counsel is invoked for a discrete, limited purpose, the police need not honor the right to counsel generally or for other purposes. For example, in Connecticut v. Barrett, 479 U.S. 523, 529 (1987), the Supreme Court held that a suspect's request to see an attorney before making a written statement did not preclude oral questioning by police absent the suspect's additional invocation of the right to silence. See also Lewis v. Miller, 220 F.3d 485, 489-90 (7th Cir. 2000)(suspect's request for attorney applied to polygraph exam and did not preclude further questioning by police); United States v. Jacobs, 97 F.3d 275, 280 (8th Cir. 1996)(where defendant told police he would want a lawyer if he had to take a polygraph test but did not request a lawyer at any other time, defendant's request for an attorney was limited to the specific circumstances of taking a polygraph test); Sauerheber v. State, 698 N.E.2d 796 (Ind. 1998)(defendant's request for counsel during taking of blood sample, an activity not covered by privilege against self-incrimination, did not preclude initiation of further contact by police).

Similarly, in United States v. Oba, 978 F.2d 1123, 1130 (9th Cir. 1992), the Ninth Circuit held that defendant's request for counsel with respect to signing a written waiver allowing an

3

X-ray examination to be taken did not preclude further questioning by police. Here, as in Oba, the defendant expressed a desire for counsel in connection with the taking of an X-ray examination of his torso and abdominal areas. Defendant's assertion of his right to counsel was, thus, limited to such search. The Supreme Court moreover, in McNeil v. Wisconsin, 111 S.Ct. 2204, 2211 (1991), "in fact never held that a person can invoke his *Miranda* rights anticipatorily in a context other than custodial interrogation."

Also, *Miranda* does not preclude officers from informing the defendant of the evidence against him or other circumstances that may allow the suspect to make an intelligent exercise of his judgment. For example, in Shedelbower v. Estelle, 885 F.2d 570, 573 (9th Cir), cert.denied, 111 S.Ct. 975 (1991), the Ninth Circuit held that a police officer's statements to defendant, after he invoked his right to counsel, that his accomplice was in custody and that the victim had identified defendant's picture as the perpetrator, even though the latter statement was untrue, did not constitute interrogation in violation of *Miranda*. See also United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994).

The defendant's motion to suppress defendant's oral statement "whatever time I'm gonna get, I'll do the time," should be denied.

RESPECTFULLY submitted this 29th day of July 2005.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and CNMI

By: _____
MARIVIC P. DAVID
Assistant U.S. Attorney

4